NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATE OF AMERICA,** | Civil Action Nos. |
| | 17-CV-1187 (KSH) (CLW) |
| Petitioner, | |
| | **OPINION & ORDER** |
| v. | |
| **ISANA RADCHIK,** | |
| Respondent. | |

**WALDOR, United States Magistrate Judge**

This matter comes before the Court upon a petition (ECF No. 1), by the United States of America, to compel compliance with summonses served on Respondent, Isana Radchik. On March 13, 2017 the Court issued an Order to Show Cause as to why Respondent, Isana Radchik should not be compelled to obey the Internal Revenue Service ("IRS") summonses served upon her. The Court heard oral argument on these issues at the Show Cause Hearing on May 3, 2017 and conducted an in-camera review of the disputed questions with Isana Radchik on May 25, 2017, for the reasons set forth below, the Court grants the motion to compel compliance.

**I.  Background**

The United States of America petitioned this Court, on February 10, 2017, for an order enforcing the IRS administrative summonses served on Isana Radchik. Revenue Agent, Lillie May, is conducting an investigation to determine the correct federal tax liabilities of taxpayers Danil and Yana Bernshteyn. (Petition ¶4.) There is a question as to whether the Bernshteyns should be assessed penalties for the 2002 to 2007 tax years for failure to report a foreign bank

1

account under 31 U.S.C. § 5314. (*Id.*) On January 12, 2017 Revenue Agent May issued IRS summonses to Radchik directing her to appear and give testimony. (Petition ¶6.) Radchik appeared before the IRS on February 29, 2017 where she answered some questions, but also invoked the tax practitioner and fifth amendment privileges. (Petition ¶8.) The Government moves before this Court to order Ms. Radchik to comply with the IRS summonses.

This Court held oral argument at a Show Cause Hearing on May 3, 2017. Petitioner maintains that neither the tax practitioner privilege nor the fifth amendment right against self-incrimination apply to the instant matter. According to the Government, the tax practitioner privilege does not apply because the questions asked of Ms. Radchik only relate to preparation of tax forms. Ms. Radchik characterized her own work with the Bernshteyns as one of tax preparation services. (Tr. at 12, 25.) It is the Government's position that legal advice would be protected but not the type of rudimentary information requested by Agent May. Additionally the Government argued that "the owner of the privilege has to claim it," meaning the Bernshteyns must invoke the privilege, and there is no evidence on the record of them doing so. (Tr. at 11.)

It is the Government's position that to assert the privilege against self-incrimination, Ms. Radchik must make a showing of a real and substantial hazard that might result by disclosing the information. (Tr. at 3.) According to the Government, no such threat exists because it is time barred from indicting Ms. Radchik and there is no current investigation of Ms. Radchik. The Government is "not delaying recommendation for a criminal investigation in order to gather more information," rather there is simply "no DOJ referral" according to Government attorney Nelson Wagner. (Tr. at 4.)

With respect to the tax practitioner privilege, Respondent "conceded that if Ms. Radchik simply took information and prepared tax returns" then that is not protected. (Tr. at 26.) But

Respondent does not agree with the Government that the advice needs to be legal advice to be protected or that because the advice pertains to a statute it is necessarily legal advice. (Tr. at 20-21.) Respondent argues that what is protected is when a tax practitioner gives advice on the series of statutes that make up the Internal Revenue Code such as, "how those statutes operate and what is required of taxpayers and how things need to be reported and what deductions can be taken." (Tr. at 20.) Respondent emphasizes that the privilege belongs to the Bernshteyns, only they can waive it, and they do not have to affirmatively claim it, as the Government suggests. (Tr. at 19.)

With respect to the fifth amendment privilege, Respondent cites case law indicating that "a civil IRS examination is the first building block to a criminal case." (Tr. at 14.) Attorney for Respondent also reminded the Court that while there are different standards discussed with respect to the fifth amendment the unifying theme amongst the case law is "not the likelihood of prosecution . . . [but] the possibility of prosecution." (Tr. at 15, 17.) Respondent believes that there are "clearly criminal overtones with respect to the underlying tax investigation" in this case because the taxpayers "allegedly failed to report foreign assets as required under the Internal Revenue Code." (Tr. at 15.) For this reason Ms. Radchik claims she has the right to invoke the fifth amendment.

## II. Applicable Law

To make a prima facie case in favor of enforcement of an IRS summons the United States must show that (1) the investigation is being conducted for a legitimate purpose, (2) the inquiry is relevant to such purpose, (3) the information sought is not already in the IRS's possession, and (4) the administrative steps required by the tax code have been followed, including that the IRS has notified the taxpayer in writing that further examination is necessary. *United States v. Trenk,* No. 06-1004, 2009 WL 485375, at *2 (D.N.J. Feb. 26, 2009) (citing *United States v. Powell*, 379 U.S.

48 (1964)). The required showing is usually made by affidavit of the agent who made the summons and is seeking enforcement.[1] *United States v. Garden State Nat'l Bank,* 607 F.2d 61, 68 (3d Cir. 1979). Respondent does not dispute that a prima facie case for enforcement of the summons has been met.

Ms. Radchik refused to answer specific questions at her IRS interview on February 29, 2017 solely based on (1) the tax practitioner privilege and (2) the fifth amendment privilege against self-incrimination.

### a. Tax practitioner privilege

Section 26 U.S.C. § 7525(a)(1) outlines the tax practitioner privilege, stating:

> the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

The privilege only applies in noncriminal tax matters before the IRS or a noncriminal tax proceeding in federal court brought by or against the U.S. *See* 26 U.S.C. § 7525(a)(2). The "IRS' investigatory powers are essential to the proper functioning of the tax system, [so] courts are reluctant to restrict the IRS' summons power, absent unambiguous direction from Congress." *2121 Arlington Heights Corp. v. IRS,* 109 F.3d 1221, 1224 (7th Cir.1997). The Section 7525 privilege "is no broader than the attorney-client privilege." *Trenk,* 2009 WL 485375, at *4. As a result, several district courts, including the District of New Jersey, have found that "[t]he privilege does not protect communications between a tax practitioner and a client simply for the preparation of a tax return." *Trenk,* 2009 WL 485375, at *4; *United States v. KPMG LLP*, 316 F. Supp. 2d 30, 35 (D.D.C. 2004); *Chao v. Koresko*, 2005 WL 2521886 (3d Cir. Oct. 12, 2005); *see also United States*

---

[1] *See* Declaration from Revenue Agent Lillie May (ECF No. 1-1).

*v. Arthur Andersen*, *L.L.P.*, 273 F. Supp. 2d 955, 957–58 (N.D. Ill. 2003), *amended on reconsideration sub nom. United States v. Arthur Andersen, LLP*, No. 02-6790, 2003 WL 21956404 (N.D. Ill. Aug. 15, 2003) (stating "[c]onfidentiality in the tax context may be waived when the communications with the tax adviser ultimately are used to prepare the client's tax returns, a non-confidential document.")

The burden is on Ms. Radchik to show the communication "was made for the purpose of obtaining . . . tax advice." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). Courts analyze this burden applying the same framework as in the attorney-client privilege context: "a client seeking tax advice must obtain that advice from a tax professional acting as such, and in a manner indicating that those communications will be kept in confidence." *Arthur Anderson*, *L.L.P.*, 273 F. Supp. 2d, at 957–58; *see also Valero Energy Corp. v. United States,* No. 06-6730, 2008 WL 4104368, at *4 (N.D. Ill. Aug. 26, 2008), *aff'd*, 569 F.3d 626 (7th Cir. 2009) (protected "communication[s] must be made for the purpose of obtaining tax advice from a federally authorized tax practitioner.") Tax advice is defined within the statute as "advice given by an individual with respect to a matter which is within the scope of the individual's authority to practice." 26 U.S.C.A. § 7525; *see also Wells Fargo & Co. v. United States*, No. 09-2764, 2014 WL 2855417, at *6 (D. Minn. June 16, 2014). This does not include "[c]ommunications made primarily to assist in implementing a business transaction," but it may include a discussion of "legal tax strategy consequences," "interpretation of a partnership agreement," a "draft valuation" of a company, or "tax planning advice". *United States v. Microsoft Corp.*, No. 15-102, 2017 WL 1788411, at *3 (W.D. Wash. May 5, 2017); *Pasadena Ref. Sys. Inc. v. United States*, No. 10-0785, 2011 WL 1938133, at *3 (N.D. Tex. Apr. 26, 2011), *report and recommendation adopted*, No. 10-785, 2011 WL 1960555 (N.D. Tex. May 19, 2011); *United States v. BDO Seidman*, *LLP*, No. 02-

4822, 2003 WL 932365, at *2 (N.D. Ill. Feb. 5, 2003), *aff'd sub nom. United States v. BDO Seidman*, 337 F.3d 802 (7th Cir. 2003).

The case law does not make a clear distinction between legal advice and tax advice. To draw such a definite line would be a distinction without a difference. The very definition of "federally authorized tax practitioner" under 26 U.S.C. § 7525(a)(3)(A) is someone "who is authorized under Federal law to practice before the Internal Revenue Service." The practitioner's job is to know the tax regulations and laws and to advise clients accordingly. It is clear from case law that a tax-payers' simple recitation of assets that the practitioner then transposes onto a tax form is not privileged communication. But, the information shared with the practitioner as a confidant for purposes of aiding the practitioner in giving advice to the tax-payer is given the same sanctity of secrecy as the communications between an attorney and his client.[2]

**b. Fifth Amendment Privilege**

The fifth amendment privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used" against him. *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). The protection is one that is at the foundation of our legal system and it can be asserted in any proceeding, civil, criminal, or administrative. The party invoking the privilege must make "specific invocations of the privilege [. . . ] with respect to particular questions." *United States v. Raniere*, 895 F. Supp. 699, 704 (D.N.J. 1995). "In evaluating a claim of privilege against self-incrimination, a court must consider the circumstances surrounding the assertion of the privilege

---

[2] *See United States v. Frederick*, 182 F.3d 496, 502 (7th Cir. 1999), describing the tax practitioner privilege when it was first adopted as protecting "communications between a taxpayer and a federally authorized tax practitioner 'to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.'" *See* 26 U.S.C. § 7525(a)(1). Nothing in the new statute suggests that these "nonlawyer practitioners are entitled to privilege when they are doing other than lawyers' work." *BDO Seidman*, 337 F.3d at 810.

and the likelihood that disclosures made by the witness, if compelled, would tend to incriminate him, or lead to incriminating evidence." *See In Re U.S. Hoffman Can Corp.*, 373 F.2d 622 (3rd Cir. 1969). Those statements "which would furnish a link in the chain of evidence needed to prosecute the person making the statement," fall within the privilege. *Id*. at 628.

The Third Circuit has noted that the "fifth amendment privilege must be liberally construed in favor of the right it was intended to secure, . . . [but should] not be exercised solely upon the subjective determination of the witness who invokes it." *Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980). The protection is limited to instances "where the witness has reasonable cause to apprehend danger from a direct answer." *Id*. The witness' "say-so does not of itself establish the hazard of incrimination" rather "[i]t is for the court to say whether [] silence is justified." *Id*. To that end it may be appropriate for the court to conduct in-camera proceedings, but the "door should be set . . . ajar only as far as necessary" and the court should "hear only enough to satisfy itself that the privilege applies." *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 475 (3d Cir. 1979) (internal citation omitted); *see also United States v. Oliver*, 410 F. Supp. 739, 748 (E.D. Pa.), *aff'd,* 546 F.2d 420 (3d Cir. 1976) (indicating "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous.")

Only the person to whom the privilege applies can claim the privilege. For example, it is not sufficient for Ms. Radchik to claim that she would be incriminating her clients' because the "privilege was never intended to permit (a person) to plead the fact that some third person might be incriminated by his testimony." *Matter of Grand Jury Empanelled*, 603 F.2d at 472 (internal citations omitted). Additionally, the person invoking the privilege "must provide more than mere

7

speculative, generalized allegations of possible tax-related prosecution," there must be "substantial and real hazards of self-incrimination." *Id.* at 705; *see also United States v. Marra*, No. 05-2509, 2005 WL 2474873, at *8 (D.N.J. Oct. 5, 2005).[3]

## III. Legal Analysis

The Court is persuaded that Respondent's interpretation of the tax practitioner privilege is more closely aligned with case law addressing the issue than the Government's analysis. There is no doubt that the Bernshteyns are the owners of the privilege, but there is no requirement for them to affirmatively assert the privilege as the Government suggests. The Bernshteyns alone are in a position to waive this privilege and Ms. Radchik can only discuss information conveyed to her pursuant to this privilege if and when the Bernshteyns have affirmed such a waiver.

What is not clear is whether the information Revenue Agent May questioned Ms. Radchik about falls within the privilege. Many of the questions Ms. Radchik invoked the privilege for pertain to basic information such as: "How do you communicate with the Bernshteyns?" or "Did Mr. Bernshteyn consult with you regarding his business, Modern Dentistry?" (*See* ECF No. 8, Exhibit A.) The question before the Court is not whether any answer to a particular question will implicate the Bernshteyns, but rather the potential criminal consequences for Ms. Radchik in answering a particular question.

The difficulty is Ms. Radchik has made no showing that she performed any work for the Bernshteyns beyond tax preparation. To date she has asserted that she prepared the Bernshteyns

---

[3] In *United States v. Harper*, 397 F. Supp. 983, 991 (E.D. Pa. 1975), in addition to the real hazard of self-incrimination standard, the court cited to two other tests that could be used in analyzing the fifth amendment privilege as it applies to a tax summons. The Fifth Circuit test looked to whether the tax investigation had become on "inquiry with dominant criminal overtones." *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969). The second test originated in the *California v. Byers*, 402 U.S. 424, 427, (1971), line of cases, but the facts of the instant matter do not parallel those types of cases where "compliance with the statutory disclosure requirements would confront the petitioner with substantial hazards of self-incrimination." *California v. Byers*, 402 U.S. 424, 430 (1971). The *Byers* line of cases has addressed the extent to which a tax-payer can invoke the fifth amendment in lieu of filling out their tax forms, but Ms. Radchik is invoking the privilege in this matter, not the taxpayers themselves.

taxes, but not mentioned any tax advice she gave or circumstances surrounding advice she may have given. Absent Ms. Radchik giving tax advice and the government calling on her to divulge the advice, Ms. Radchik cannot assert the tax practitioner privilege.

The privilege against self-incrimination is broader in terms of the questions it could possibly protect Ms. Radchik from answering, but still not applicable. At this point there is no indication that criminal charges will be brought against Ms. Radchick. The investigation is being conducted by an IRS Agent for the purpose of assessing penalties for unpaid taxes. Ms. Radchick needs to point to some concrete evidence that she has a "real and substantial" concern regarding criminal prosecution. Stating her fear alone is not sufficient. The Court needs more than her "say-so" to appropriately apply fifth amendment protections. There must be a showing that Ms. Radchik's answers to the Government's questions would furnish the necessary link to prosecute Ms. Radchick under one of the statutes she mentions. Nothing in Respondent's Opposition to the Order to Show Cause, supplemental brief, or in-camera testimony substantiates her alleged fear of prosecution. Without more, this Court cannot afford Ms. Radchick protection under the fifth amendment.

**IV.     Conclusion**

Based on the foregoing, Isana Radchik shall present herself for the remainder of her interview no later than June 23, 2017. To the extent follow-up questions by the Government require Ms. Radchik to reveal confidential communication that fall under the tax practitioner privilege as described herein, nothing in this order shall prevent her from asserting the appropriate protections at that time.

Thus far no question suggested by the Government has a real possibility of incriminating Ms. Radchik. Should those circumstances change, nothing in this order shall prevent her from asserting the appropriate protections at that time.

## V. Order

**ACCORDINGLY, IT IS** on this 1st day of June, 2017,

**ORDERED** that Petitioner's Motion to Compel Isana Radchik to comply with the summonses is granted;

**ORDERED** that the remainder of Isana Radchik's interview shall take place by June 23, 2017;

**FURTHER ORDERED** the Clerk shall terminate ECF No. 1.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**